# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 23-521-2** |
| **MICHAEL BYARD COLBERT** | : | |

### <u>GOVERNMENT'S SENTENCING MEMORANDUM</u>

Over the course of approximately two years, defendant Michael Byard Colbert, along with his co-defendants Tariq Bennet and Syheed Goodman, participated in a scheme to steal at least 46 vehicles from rental car locations, car dealerships and home improvement/tractor supply stores in and around Pennsylvania. The defendants obtained the personal identifying information of third-party victims predominately by purchasing stolen personal identifying information from online platforms. Defendant Goodman would then use this personal identifying information to create fraudulent driver's licenses used by all three defendants during the conspiracy. Defendant Colbert participated in the actual fraudulent test drives, purchases, rentals and sales of the stolen vehicles. The test-driven and rented vehicles were never returned; no payments were ever made on the "purchased" vehicles.

For these reasons, as well as for the reasons provided below, the government recommends a sentence of incarceration below the advisory guideline range of 41 months to 51 months imprisonment, with an additional two-year mandatory sentence to run consecutive to any other sentence, absent any basis for a below-guideline sentence addressed in the supplemental sealed attachment to this sentencing memorandum.

A sentencing court follows a two-step process, first calculating the range under the Sentencing Guidelines, and then considering that range along with all pertinent 18 U.S.C. § 3553(a) factors in determining the appropriate sentence. *See* USSG § 1B1.1 (Nov. 1, 2025).[1]

At the second step of the sentencing process, "[t]he record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted). *See also Rita v. United States*, 551 U.S. 338, 356 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."); *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc) ("Failure to give 'meaningful consideration' to any such argument renders a sentence procedurally unreasonable which, when appealed, generally requires a remand for resentencing.").

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors.

## I.   **BACKGROUND**

On December 14, 2023, a grand jury in the Eastern District of Pennsylvania returned an eleven-count Indictment charging the defendant, Michael Byard Colbert, and co-defendant Tariq

---

[1] Courts previously followed a three-step process, in which the court first calculated the guideline range, then next ruled on motions for departure, before considering the 3553(a) factors. *See United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). In an extensive amendment to the Guidelines effective November 1, 2025, the Sentencing Commission eliminated the departure provisions in the manual and dictated the two-step process described above.

Bennett with six counts of wire fraud, in violation of 18 U.S.C. § 1343 (Counts 1 through 6); three counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A (Counts 7 through 9) and two counts of transportation of stolen motor vehicles, in violation of 18 U.S.C. § 2312 (Counts 10 and 11).

On June 13, 2024, the grand jury indicted the defendant, along with co-defendants Tariq Bennett and Syheed Goodman, on 31 counts total via a superseding indictment. The defendant was specifically charged with 24 counts: conspiracy, in violation of 18 U.S.C. § 371 (Count 1); wire fraud, in violation of 18 U.S.C. § 1343 (Counts 2 through 17); aggravated identity theft and aiding and abetting aggravated identity theft, in violation of 18 U.S.C. §§ 1028A(a)(1), (c)(5) and 2 (Counts 21 through 23); and transportation of a stolen vehicle and aiding and abetting the transportation of a stolen vehicle, in violation of 18 U.S.C. §§ 2312 and 2 (Counts 28 through 31).

On October 7, 2025, the defendant appeared before the Honorable Karen S. Marston, United States District Court Judge for the Easter District of Pennsylvania, and pled guilty, via a plea agreement, to Counts 1 through 17, 21 through 23, and 28 through 31 of the Superseding Indictment. During his colloquy, the defendant admitted to his role in the conspiracy, including his personal involvement in the thefts at least 25 of the vehicles.

## II.      SENTENCING CALCULATION

### A.      Statutory Maximum Sentence.

The maximum sentence that may be imposed on the defendant is a term of imprisonment of 371 years, a term of supervised release of 3 years, a fine of $6,000,000, and a special assessment of $2,400. There is a mandatory minimum term of imprisonment of 2 years consecutive to any other count (unless it is a count under Section 1028, pursuant to

1028A(b)(2)), on Counts 21 through 23.

B.    **Sentencing Guidelines Calculation.**

The Probation Office correctly calculated the defendant's advisory guideline range as follows: The 2025 U.S. Sentencing Guidelines Manual is the applicable manual for purposes of calculating the guidelines. PSR at ¶73. Counts 1 through 17 and 28 through 31 group pursuant to USSG §3D1.2(d) because the offense level is determined largely on the basis of the total amount of harm or loss. PSR at ¶75. Specifically, pursuant to Application Note 4 of USSG § 3D1.2, Count 1, charging conspiracy, groups with Counts 2 through 17, 27, 29 through 31, which charge the substantive offenses that were the sole object of the conspiracy charge. *Id.* Counts 21 through 23 are excluded from grouping pursuant to USSG §3D1.1(b)(1) because they carry mandatory terms of imprisonment that must be imposed to run consecutively to any other term of imprisonment. PSR at ¶76.

Under USSG §2B1.1(a)(1), the base offense level for the defendant's conduct is 7 because the defendant was convicted of an offense referenced to this guideline and that offense of conviction has a statutory maximum term of imprisonment of 20 years or more (Counts 2-17). PSR at ¶77. Under USSG §2B1.1(b)(1)(H), the actual fraud loss caused in furtherance of the criminal activity jointly undertaken by the defendant and his co-schemers for which the defendant is responsible was at least $911,832.75. Because this amount is greater than $550,000 but less than $1,500,000, the base offense level is increased by 14 levels. PSR at ¶78. Because the offenses involved more than 10 victims, the offense level is increased by 2 levels under USSG §2B1.1(b)(2)(A)(i). PSR at ¶79.

Because the defendant has pled guilty to Counts 21 through 23, which results in a mandatory, consecutive two-year term of imprisonment, the defendant's offense level is not

subject to the two-level increase pursuant to USSG §2B1.1(b)(11)(C)(i) even though the offense involved the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification (USSG §2B1.6, Application Note 2). PSR at ¶80. The offenses involved an organized scheme to steal or receive stolen vehicles, so the offense level is increased by 2 levels pursuant to USSG §2B1.1(b)(15)(A). PSR at ¶81.

The defendant had demonstrated acceptance of responsibility for his offense, making the defendant eligible for a 2-level downward adjustment, pursuant to USSG §3El.l(a). PSR at ¶90. The government agrees with Probation's assessment that defendant Colbert was the least culpable participant in the conspiracy. PSR at ¶65. He was infrequently inside the dealerships or stores and, based on the government's investigation, received a lesser cut of the proceeds. Colbert does not appear to have fabricated any of the fraudulent driver's licenses and does not appear to have been involved in 21 out of the 46 thefts. When he did participate, Colbert more frequently drove Bennett and waited outside in the car. PSR at ¶65. Based upon communications between the parties, it appears that Colbert's substance abuse addiction made him so unreliable as to be effectively incapable of being an equal participant. As the defendant was a minor participant in any criminal activity, the offense level decreases by two levels (USSG §3B1.2(b)). PSR at ¶83.

The defendant had demonstrated acceptance of responsibility for his offense, making the defendant eligible for a 2-level downward adjustment, pursuant to USSG §3El.l(a). PSR at ¶87. Finally, the defendant had assisted authorities in the investigation or prosecution of his own misconduct by timely notifying the government of his intent to plead guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to

allocate their resources efficiently, resulting in a 1-level downward adjustment, pursuant to USSG §3E1.1(b). PSR at ¶88.

The defendant's Total Offense Level is 20. PSR at ¶89. The defendant has a criminal history score is 4, which establishes a criminal history category of III. PSR at ¶94. Based on the foregoing, the defendant's guideline imprisonment range is 41 to 51 months, with a mandatory two-year sentence for each of Counts 21 through 23 to run consecutive to any other sentence. PSR at ¶140. The terms of imprisonment pursuant to 18 U.S.C. § 1028A may run concurrently or consecutively to one another. PSR at ¶139; 18 U.S.C. § 1028A(b)(4).[2] The defendant's total guideline range is therefore 65 months to 132 months, depending on whether the three mandatory two-year sentences run consecutively or concurrently to one another. PSR at ¶140.

## III.    <u>ANALYSIS</u>

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 569 U.S. 530, 542 (2013) (quoting *Freeman v. United States*, 564 U.S. 522, 529 (2011) (plurality opinion); ellipsis in original). "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 569 U.S. at 543. "The federal system adopts procedural measures

---

[2] In exercising its discretion in determining whether to run these sentences concurrently or consecutively, the Court should "consider 'applicable guidelines and policy statements issued by the Sentencing Commission' and make a record of the factors considered." *United States v. Smith*, 401 F. App'x 671, 672 (3d Cir. 2010) (internal citation omitted).

intended to make the Guidelines the lodestone of sentencing." *Id.* at 544.

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

**A.    Consideration of the 3553(a) Factors Regarding Imprisonment.**

For the reasons outlined below, including a number of mitigating circumstances, the government is seeking a sentence consistent with all the factors under Section 3553(a) and specifically requests a sentence of incarceration below the guideline range, with Counts 21 through 23 for violations of 18 U.S.C. § 1028A to run concurrently, consistent with the plea agreement entered into by the parties.

1.    The nature and circumstances of the offense and the history and characteristics of the defendant

The defendant's offenses were serious and carried out over the course of multiple years. The defendants took advantage of the car rental and car dealership companies' pandemic-era policies to facilitate their thefts, including by wearing masks into rental locations and dealerships

to obscure their identities, and exploiting the relaxed policies on employees accompanying customers during test drives.

While in some instances the transactions were quickly flagged as fraudulent, in others the fraudulent nature was only identified after victims were contacted by creditors and/or police. One victim (G.M.) had to pay approximately $1,600 out of pocket to avoid the fraud affecting his credit, several victims (J.M. and K.S.) suffered adverse effects to their credit, and at least one victim (P.D.) had to hire an attorney to respond to collection efforts. Corporate victims, including the dealerships and rental locations, ultimately had to bear hundreds of thousands of dollars in losses from the thefts. While some were made fully or partially whole through insurance claims, widespread theft like that carried out by the defendants can materially affect pricing of vehicles in a community to offset loss amounts and higher insurance premiums.

Consideration of the nature of the offenses therefore counsels in favor of a guideline sentence.

> 2.    The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense and the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant

The defendant's history and criminal record require a nuanced review. The defendant was approximately 31 to 33 years old during the course of this scheme and has two prior convictions. The first of these convictions stems from a 2013 burglary that the defendant committed when he was 23. PSR at ¶90. While undoubtedly serious, especially considering that the defendant and his accomplice stole 2 firearms during the theft, it is notable that this occurred almost 9 years prior to the start of the present conspiracy. The second conviction was related to a 2019 insurance fraud scam. PSR at ¶91.

The defendant was raised predominately by his mother, who is described by the defendant as a "God fearing woman" but who struggled to express affection. PSR at ¶105. The defendant indicated that his mother provided for his material and emotional needs, but they lived in a violent area. *Id.* The defendant's mother sent him to live with his alcoholic father from approximately 2006 to 2009 because the defendant was "on the streets." PSR at ¶ 106. The defendant described at least one instance of physical abuse by his father during this time. PSR at ¶104.

One important factor in assessing the defendant's history is his extensive history of drug abuse, which the defendant has acknowledged directly contributed to his participation in the crimes for which he has pled guilty. PSR at ¶125. Specifically, the defendant admitted to committing these crimes to obtain money to finance his drug purchases. *Id.* The defendant's self-reported substance abuse began at the tragically young age of 13. PSR at ¶122. The defendant used marijuana daily from age 15 to 17. *Id.* At age 16, he began abusing Percocet. *Id.* From approximately 18 to 23, the defendant was ingesting 100 to 120 milligrams per day. *Id.* Following his burglary arrest in 2013 at age 23, the defendant decreased his Percocet use. The following year, in 2014, he began taking unprescribed Xanax and Adderall. *Id.* In 2016, the defendant also began abusing Percocet again. *Id.* The defendant reported abusing all three substances regularly until 2019, at which point he began using ecstasy daily until the date of his arrest for the instant offense. *Id.*

The defendant's mother acknowledged that the years the defendant spent on drugs. PSR at ¶109. The defendant's mother described Colbert's life while he was on drugs, stating that he was always angry, his house was a mess, and he was not able to properly assist in the raising of his own daughter. *Id.*

Following his arrest on the present charges, the defendant tested positive for amphetamines and MDMD. PSR at ¶123. The defendant underwent detoxification and inpatient drug treatment at Beacon Point Recovery Center from February 1, 2024, through March 18, 2024, when he successfully completed the program.[3] *Id.* The defendant subsequently underwent outpatient dual diagnosis treatment and medically assisted treatment at NET in Philadelphia where he was diagnosed with abuse of multiple substances. *Id.* He was successfully discharged from NET on January 16, 2025. The defendant participated in the Drexel Reentry Project from June 5, 2024, through February 20, 2025. PSR at ¶119. The defendant successfully completed all 26 sessions and was described by the program director as "motivated," "engaged" and "a model participant." *Id.*

The defendant also successfully participated in the STRIDES program from May 9, 2024, through May 22, 2025, graduating from the program on October 30, 2025. PSR at ¶124. During this program, the defendant completed training to become a Certified Recovery Specialist ("CRS"), passed the Pennsylvania Certification Board's Examination and received a License from the Commonwealth of Pennsylvania to be a CRS. PSR at ¶¶123, 124. The defendant has been employed with the Pennsylvania Recovery Organization – Achieving Community Together ("PRO-ACT") since January 2025. PSR at ¶129. He began as a Recovery Specialist but has since been promoted to Recovery Support Services Coordinator. *Id.* The defendant's supervisor told Probation that she "couldn't say enough about how well [the defendant is] doing," *Id.* Notably,

---

[3] While at Beacon, the defendant was diagnosed with bipolar disorder, but he believes he was actually just exhibiting symptoms related to his drug use. PSR at v118. Both the defendant and his mother indicated that he has not exhibited symptoms of bipolar disorder since getting sober. *Id.*

prior to his arrest in this case, the defendant been unemployed for at least 6 years.

The defendant has expressed remorse for his role in the crimes for which he has been charged and has exhibited his commitment to a positive future through his dedication to completing drug treatment and obtaining long-term employment. During the Presentence Investigation interview, the defendant reflected on his prior actions stating, "*I don't know who that person is.*" PSR at ¶70. The defendant credits his arrest in this case with his current sobriety, going so far as to state that "*[t]his case saved my life.*" *Id.* The defendant's mother reiterated the defendant's change since his arrest, stating that "*[h]e really shifted his life and loves his job. He is no problem and does everything a man should around the house."* The defendant also now has custody of his daughter every weekend, and on Mondays and Tuesdays after school. He is able to contribute to her education costs and general needs. PSR at ¶107

The defendant's long-term drug addiction appears to have been directly related to his prior criminal activity, as well as his current charges. The defendant's evident commitment to a more positive future, including successfully completing drug treatment, maintaining his sobriety, completing vocational training, and obtaining and maintaining employment – including at least one promotion – weigh strongly in favor of a below guideline sentence.

3.     The guidelines and policy statements issued by the Sentencing Commission and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct

The unique factors supporting a below guideline sentence, in particular the mitigating factor of the defendant's severe and long-term drug abuse, as well as the defendant's particular level of dedication in seeking treatment for his addiction as well as successfully obtaining long-term employment, support a below guideline sentence and thus complying with Section

3553(a)(6) and avoiding undue disparity. PSR at ¶155. Furthermore, the defendant's role in the car theft scheme was materially less than his co-defendants, as noted above.

    4. <u>The need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner</u>

There is no need in this case to adjust the sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . ." § 3553(a)(2)(D).

    5. <u>The need to provide restitution to any victims of the offense</u>

A below-guideline sentence is consistent with the need to adequately punish the defendant, while also recognizing the import of allowing the defendant to return to work to facilitate the payment of restitution to the many victims in this case. Restitution in the amount of $442,885.56 shall be ordered as to the defendant. PSR at ¶152.

**B.** **Supervised Release.**

Pursuant to Sections 5D1.1 and 5D1.2 of the Sentencing Guidelines, as amended effective November 1, 2025, the Court is directed to conduct an "individualized assessment" when deciding whether to impose a term of supervised release, and if supervised release is imposed, how long the term should be. The Court is further directed to state in open court its reasons for imposing or not imposing a term of supervised release, and its reasons for the length of a term imposed. Further, Section 5D1.3 sets forth mandatory conditions of a term of supervised release, and "discretionary conditions" that the Court may impose, following the same individualized assessment.

The guideline commentary, consistent with 18 U.S.C. § 3583(c), provides that the "individualized assessment" should rest on consideration of the same sentencing factors under 18 U.S.C. § 3553(a) that are considered with respect to a term of imprisonment, with the exception

of Sections 3553(a)(2)(A) (the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense") and 3553(a)(3) ("the kinds of sentences available"), which do not apply with regard to supervised release decisions.

In this case, a term of supervised release of at least 3 years is warranted. As discussed at length above, the defendant has a significant history of substance abuse. A period of supervised release could ensure that the defendant has additional support and access to resources in maintaining his sobriety and employment. Additionally, as discussed above, the defendant will be ordered to pay a substantial amount in restitution, his ability to do which is greatly impacted by both his continued sobriety and employment. A term of supervised release in this case advances the goals of sentencing to deter criminal conduct, § 3553(a)(2)(B), protect the public, § 3553(a)(2)(C), assure that the defendant continues to pursue education and vocational efforts that promote rehabilitation, § 3553(a)(2)(D), and pays restitution to victims, § 3553(a)(7). Further, the Sentencing Commission recognizes that "the more serious the defendant's criminal history, the greater the need for supervised release." § 5D1.1 app. note 2. The Commission adds: "In a case in which a defendant sentenced to imprisonment is an abuser of controlled substances or alcohol, it is highly recommended that a term of supervised release also be imposed." § 5D1.1 app. note 3.

This assessment also supports imposition of all of the mandatory and standard conditions of supervised release listed in Section 5D1.3.

## IV.    **CONCLUSION**

For these reasons and subject to any that may be presented at the defendant's sentencing hearing and in the Sealed Supplement, the government believes that a below guideline sentence,

with an additional two-year mandatory sentence to run consecutive to any other sentence, that

appropriately accounts for the defendant's criminal conduct and the applicable mitigating

circumstances is appropriate in this case.

Respectfully submitted,

DAVID METCALF
United States Attorney


*/s Meghan Claiborne Bisio*
MEGHAN CLAIBORNE BISIO
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that this Sentencing Memorandum has been served on the Filing User

identified below through the Electronic Case Filing (ECF) system:


       R. Emmett Madden, Esq.
       emadden@thephillylawyers.com
       *Attorney for Defendant Michael Byard Colbert*



                   */s Meghan Claiborne Bisio*
                   MEGHAN CLAIBORNE BISIO
                   Assistant United States Attorney



DATED:  April 21, 2026.